## IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

JENNIFER WALLIS,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　PLAINTIFF,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
VS.　　　　　　　　　　　　　　　　　)　　　NO. _183647-1_
　　　　　　　　　　　　　　　　　　　)
BROWNLEE CONSTRUCTION, INC., EDMOUNDS　)
CONSTRUCTION INC., JASON EDMOUNDS, Individually and　)
d/b/a EDMOUNDS CONSTRUCTION, INC., ADRIAN　)
LUNSFORD, Individually and d/b/a EDMOUNDS　)
CONSTRUCTION, INC., JESSICHA LUNSFORD and　)
STEVEN GLASSCOCK,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　DEFENDANTS.　　　　　　　　　　)

### SUMMONS

TO:　　BROWNLEE CONSTRUCTION, INC
　　　　Registered Agent: Joseph Brownlee
　　　　3409 Henson Road
　　　　Knoxville, Tennessee 37921

　　　　You are hereby summoned and required to serve upon the Plaintiff's Attorney, Lawrence P. Leibowitz, whose address is Leibowitz Law Firm, PLLC, 608 S. Gay Street, Suite 200, Knoxville, Tennessee 37902, a true copy of the Answer to the Complaint which is herewith served upon you, within thirty (30) days after service of this summons upon you, exclusive of the day of service. You will file the original Answer with the Court.

　　　　If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

　　　　Issued this _3/st_ day of _August_, 2012.

　　　　Witness, _Howard B Hoyn_, Clerk of said Court, at office in Knox County, Tennessee.

ADA
FOR ASSISTANCE CALL
865 / 215-2952
TTY: 865 / 215-2497

　　　　　　　　　　_Howard B Hoyn_
　　　　　　　　　　CLERK AND MASTER

　　　　　　　　　　BY: _Jen Carson_
　　　　　　　　　　Deputy Clerk

### NOTICE

**TO THE DEFENDANT(S):**

　　　　Tennessee law provides a Four Thousand Dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary, however, **unless it is filed before the Judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list.** Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a Lawyer.

　　　　Received this _31_ day of _Sept_, 2012.

　　　　　　　　　　_____
　　　　　　　　　　Deputy Sheriff / Process Server

**EXHIBIT
A**

## IN THE CHANCERY COURT FOR KNOX COUNTY, TENNESSEE

JENNIFER WALLIS )
)
    Plaintiff, )
)
vs. )
)
BROWNLEE CONSTRUCTION, INC., )
EDMOUNDS CONSTRUCTION, INC., )
JASON EDMOUNDS, individually and d/b/a )     Docket No. 1836471
EDMOUNDS CONSTRUCTION, INC., )
ADRIAN LUNSFORD, individually and d/b/a )
EDMOUNDS CONSTRUCTION, INC., )
JESSICHA LUNSFORD, and )
STEVEN GLASSCOCK )
)
    Defendants. )

FILED

2012 AUG 31 PM 2: 02

HOWARD G. HOGAN

## COMPLAINT

Comes now the Plaintiff Jennifer Wallis ("Plaintiff"), by and through counsel, and for a cause of action against Defendants Brownlee Construction, Inc., Edmounds Construction, Inc., Jason Edmounds, individually and d/b/a Edmounds Construction, Inc., Adrian Lunsford, individually and d/b/a Edmounds Construction, Inc., and Steven Glasscock (collectively the "Defendants"), respectfully states unto this Court as follows:

### I. PARTIES AND JURISDICTION

1.     Plaintiff is a citizen and resident of Knox County, Tennessee.

2.     Defendant Brownlee Construction, Inc. ("Brownlee") is a Tennessee corporation with its principal place of business at 3409 Henson Road, Knoxville, Tennessee 37921. Process may be served upon Defendant Brownlee Construction, Inc. through its registered agent, Joseph Brownlee, at 3409 Henson Road, Knoxville, Tennessee 37921.

3.     Defendant Edmounds Construction, Inc. ("ECI") is believed to be a Louisiana business

organization with offices at 1720 Kaliste Saloom Road, Lafayette, Louisiana 70508. Process may be served upon Defendant ECI through Jason Edmounds, at 1720 Kaliste Saloom Road, Lafayette, Louisiana 70508 through the Tennessee Secretary of State pursuant to the pursuant to the Long Arm Statute T.C.A. § 20-2-215. Upon information and belief, Defendant ECI was not registered to do business in Tennessee.

4.    Upon information and belief, Defendant Jason Edmounds ("Edmounds") is a resident of Collin County or Denton County, Texas, and may be served at his principal place of business 4467 Siena Drive, Frisco, Texas 75034 through the Tennessee Secretary of State pursuant to the pursuant to the Long Arm Statute T.C.A. § 20-2-215.

5.    Upon information and belief, Defendant Adrian Lunsford ("Lunsford") is believed to be a resident of Knoxville, Tennessee, upon whom service of process can be had at 317 Magnolia Grove Way, Knoxville, Tennessee 37922.

6.    Upon information and belief, Defendant Jessicha Lunsford is believed to be a resident of Knoxville, Tennessee, upon whom service of process can be had at 317 Magnolia Grove Way, Knoxville, Tennessee 37922.

7.    Defendant Steven Glasscock ("Glasscock") is a resident of Knox County, Tennessee and may be served at 220 W. Jackson Avenue, Knoxville, Tennessee 37902.

8.    All actions complained of herein occurred in Knox County, within the jurisdiction and venue of this Court.

## II.  FACTS

9.    Plaintiff is a college graduate who had recently returned to Knoxville, Tennessee in the early summer of 2011 and began looking for employment through a temporary agency.

-2-

10. Upon information and belief, Defendants Brownlee and ECI entered into a working relationship whereby ECI and its principals and employees (including Edmounds, Lunsford, and Glasscock) acted as agents of and operated under the name of Brownlee Construction, Inc.

11. Plaintiff was hired by Brownlee through a temporary agency in late June 2011. All checks received by Plaintiff were drawn on an account in the name of Brownlee Construction.

12. Plaintiff's direct supervisors included Adrian Lunsford and Steven Glasscock.

13. Plaintiff did general bookkeeping and office management for Brownlee at an office location on Montbrook Lane in Knoxville, Tennessee. The office was managed by Jason Edmounds, Adrian Lunsford, Jessicha Lunsford and Steven Glasscock.

14. At all times relevant to this litigation, Plaintiff worked a regular shift Monday through Friday, and part time on Saturdays as needed.

15. Shortly after being hired, Plaintiff was introduced to Defendant Steven Glasscock, the production manager. The office was a small space with three rooms, one of which was Plaintiff's, one of which belonged to the salesmen, and one of which belonged to Defendant Steven Glasscock. Plaintiff worked primarily in the office with Defendant Steven Glasscock, and throughout the day would also work with office manager Jessicha Lunsford when she came in the office to give instructions and communicate with the salesmen.

16. At that time, Plaintiff's primary responsibility was to enter all the relevant information for the customer data base and to issue project order numbers for jobs. Plaintiff's responsibilities would grow, and decrease, as Defendant Adrian Lunsford and his wife Jessicha Lunsford saw fit. Plaintiff was supervised primarily by Defendants Steven Glasscock and Jessicha Lunsford.

17. The sexual harassment began on or about July 4, 2011 and continued through Plaintiff's

-3-

termination on November 2, 2011, and into the months after her termination.

18.   On or about July 4, 2011, Defendant Steven Glasscock began to contact Plaintiff after hours and inquire about how to pursue women.

19.   Defendant Glasscock appeared to Plaintiff as a quirky guy in his late thirties who was trying to date in a new town. Plaintiff would oblige him with responses on how to approach women based on his expressed need for a female's opinion.

20.   Soon after he began asking for love advice, Defendant Glasscock began asking Plaintiff to socialize after working hours. Plaintiff would defer the advances with polite excuses, such as the inability to obtain a sitter or the need to spend time with family.

21.   Defendant Glasscock then began inviting Plaintiff on weekend adventures such as trips to Gatlinburg, or Bristol, Tennessee. Plaintiff continued to defer his advances with polite excuses, such as the inability to obtain a sitter or the need to spend time with family.

22.   Defendant Glasscock did not seem deterred by her repeated responses and then began to send inappropriate text messages to Plaintiff almost nightly.

23.   Around the same time Defendant Glasscock began to pursue Plaintiff, Defendant Lunsford became a more prominent figure in the office. Defendant Lunsford instructed Plaintiff to keep salesmen out of the office and informed Plaintiff that the salesmen were probably trying to "get in her pants" to obtain job folders. Plaintiff informed Defendant Lunsford that she was offended by his assumption. Defendant Lunsford told the Plaintiff that she was a very attractive woman and that Defendant Lunsford could see why all of his salesmen were interested in her.

24.   In or about August 2011, Defendant Glasscock became interested in Plaintiff's interactions with other employees and salesmen and became very irritated with Plaintiff and began to make

-4-

derogatory comments ranging from a request to make coffee for him in the morning to making comments to Defendant Adrian Lunsford that Plaintiff was allowing the salesmen to view confidential information about their accounts.

25.    In or about September 2011, Defendant Lunsford superficially "fired" and "re-hired" Plaintiff in order to avoid continued payments to the temporary agency through which Plaintiff was hired. Defendant Glasscock bragged to Plaintiff that he convinced Defendant Lunsford to do this as if Plaintiff owed Defendant Glasscock some obligation or compensation for having a full-time job.

26.    In or about September 2011, Defendant Lunsford began calling Plaintiff after hours to discuss the business and talk about himself and what he had done in his life. Defendant Lunsford made promises that Plaintiff's pay would be increased and that Plaintiff had secured a stable position in a promising industry.

27.    On or about Labor Day 2011, Defendant Glasscock hosted a company party at his downtown Knoxville loft. Plaintiff understood that the event would include adults and children. Plaintiff met Defendant Edmounds for the first time during the event. Plaintiff's understanding of this event was that everyone from the company would be present and because drinking was involved everyone would be staying at Defendant Glasscock's loft. During the event, Defendant Glasscock acted in an inappropriate and offensive manner towards Plaintiff.

28.    Defendant Glasscock then began making sexual advances towards Plaintiff. When his advances were refused by Plaintiff, he continued to act in an offensive manner.

29.    The environment in the workplace became noticeably more derogatory following this incident. Defendant Glasscock became overly interested and obsessed with Plaintiff's actions.

30.    Defendant Glasscock's attitude towards Plaintiff became erratic and would vary from day

-5-

to day. Following the incident over Labor Day weekend, he would continue to ask what Plaintiff was doing for the weekend and other days he would make derogatory allegations toward Plaintiff and comments about how Plaintiff would never "hang out" with him.

31. Shortly thereafter, Defendant Lunsford instructed Plaintiff to split her time between the office and the "home office" at the residence of Defendant Lunsford. Defendant Lunsford represented the reason for the change as a need to move files to the "home office" because Defendant Glasscock had informed Defendant Lunsford that all salesmen were trying to "get in [Plaintiff's] pants."

32. During her time working in the "home office," Plaintiff informed Defendant Lunsford and his wife Jessicha Lunsford of the inappropriate comments and actions of Defendant Glasscock. Defendant Lunsford informed Plaintiff that Defendant Glasscock was extremely valuable to the company.

33. After this conversation, rumors and comments in the office became worse. Defendant Glasscock falsely accused Plaintiff of being pregnant through her alleged interactions with a salesman. Defendant Glasscock made false accusations about the alleged pregnancy that were provocative and embarrassing to Plaintiff and others in the office. Defendant Lunsford called Plaintiff at home after hours to inquire about the false allegations and the alleged pregnancy.

34. When confronted by Plaintiff, Defendant Glasscock dismissed the accusations as being a "joke." Plaintiff told office manager Jessicha Lunsford that Defendant Glasscock's actions and comments needed to stop.

35. The late night phone call from Defendant Lunsford was not the first after hours phone call Plaintiff received from her supervisor. Defendant Lunsford often called Plaintiff during the weekends to talk about the business after he had been drinking. Defendant Lunsford's phone calls to Plaintiff

-6-

eventually grew into a personal nature, including descriptions of derogatory ways in which he treated and communicated with his wife, Jessicha Lunsford.

36. Defendant Lunsford's derogatory comments to and about his wife continued during working hours, and often made Plaintiff very uncomfortable.

37. Defendant Lunsford invited Plaintiff to socialize after working hours, possibly including each of their daughters, but Plaintiff declined.

38. In or about October 2011, the phone calls and inappropriate text messages from Defendant Glasscock continued after working hours, and into all hours of the night. The text messages to Plaintiff included threats of Plaintiff losing her job. Plaintiff reported these actions to office manager Jessicha Lunsford, who remarked that Defendant Glasscock's actions were "sexual harassment."

39. In or about October 29, 2011, Defendant Glasscock hosted another company event at his home. Plaintiff refused to attend the event at Defendant Glasscock's home, but did participate in company activities that occurred in and around downtown Knoxville. Before these activities, Defendant Glasscock confronted Plaintiff about her reports to Defendant Lunsford and office manager Jessicha Lunsford.

40. Defendant Glasscock continued the inappropriate sexual comments and text messages leading up to the company activities in or about October 29, 2011.

41. On or about October 31, 2011, Jessicha Lunsford informed Plaintiff that her hours would be decreased and that Jessicha Lunsford would inform Plaintiff of when she was needed in the office. On or about November 1, 2011, Plaintiff contacted Defendant Jason Edmounds to inquire about the situation.

42. Defendant Lunsford, Defendant Edmounds, and Defendant Jessicha Lunsford then contacted

-7-

Plaintiff via conference call. Defendant Lunsford expressed concern over two invoices. Plaintiff's response described and explained the reasons for the way in which they were entered. Defendant Lunsford then expressed anger towards Plaintiff for not finding a babysitter to watch his minor child during the company party held on October 29, 2011.

43. At some point during the conversation, Defendant Lunsford informed Plaintiff that Defendant Edmounds and Jessicha Lunsford were no longer participating in the call. Defendant Lunsford then informed Plaintiff that she was terminated, and that he did not need a female in his company making complaints of sexual harassment, and that Defendant Glasscock was Defendant Lunsford's right hand man and "was not going anywhere."

44. Upon information and belief, the derogatory comments about Plaintiff in the workplace continued after her termination.

45. Plaintiff was discriminated against based on her gender, sexually harassed, and ultimately terminated in retaliation for making reports concerning sexual harassment and attempted intimidation to her supervisors.

46. During the course of her employment leading up to the circumstances at issue in this litigation, Plaintiff had consistently satisfied all of the job performance criteria established by the Defendants; she had received no complaints, reprimands, negative evaluations, reviews, or feedback regarding her job performance.

47. Plaintiff was extremely upset about being sexually harassed, particularly in the presence of her co-workers and supervisors, and about being terminated without cause.

48. Plaintiff was told by her supervisor, Defendant Adrian Lunsford, that she was being terminated because he would not tolerate allegations of sexual harassment.

-8-

49. As a direct and proximate cause of the acts and omissions of the Defendants, including acts of sexual harassment and the wrongful and retaliatory discharge of Plaintiff, Plaintiff has suffered lost back wages; lost future wages; harm to her reputation; medical issues; and legal fees and court costs.

50. Further, and also as a direct and proximate cause of the acts and omissions of Defendants, including acts of sexual harassment and the wrongful and retaliatory discharge of Plaintiff, Plaintiff has endured significant embarrassment, humiliation, shame, and emotional and mental distress.

51. Upon information and belief, Defendants have entered into a monetary settlement of claims amongst themselves.

52. Prior to this settlement, and prior to dismissal of Docket No. 182582-1, *Brownlee Construction v. Edmounds Construction, Inc., Adrian Lunsford, and Jason Edmounds,* in Knox County Chancery Court, involving some or all of the Defendants, counsel for the Defendants were informed of Plaintiff's claims.

53. At the request and direction of counsel for Defendants, Plaintiff submitted correspondence regarding her claim with the understanding that Defendants were compiling a list of claims and obligations to be dealt with in a comprehensive settlement, and that Plaintiff would be included in any such discussions or settlement.

54. Upon information and belief, Plaintiff's claim was not included nor resolved in such a settlement, and counsel for Defendants have obtained and subsequently disbursed or retained all monies that were deposited with the Chancery Court in Docket No. 182582-1, *Brownlee Construction v. Edmounds Construction, Inc., Adrian Lunsford, and Jason Edmounds,* totaling over one million five hundred thousand dollars ($1,500,000.00).

-9-

## III.   COUNT I

### THRA:   SEX DISCRIMINATION, SEXUAL HARASSMENT, AND RETALIATION

55.   This cause of action is filed against Brownlee Construction, Inc., as an employer, and against Edmounds Construction, Inc., Jason Edmounds, individually and d/b/a Edmounds Construction, Inc., Adrian Lunsford, individually and d/b/a Edmounds Construction, Inc., Jessicha Lunsford, and Steven Glasscock, individually for aiding, abetting, inciting, compelling and/or commanding illegal acts in violation of the THRA.

56.   Based on the foregoing, Defendant Brownlee Construction, Inc., and all remaining Defendants, violated the THRA by allowing Plaintiff, a member of a protected class, to be discriminated against because of her sex and by allowing her to be subjected to a hostile working environment and sexual harassment.

57.   Defendant Brownlee Construction, Inc.'s managers, through their apparent and actual authority, discriminated and retaliated against Plaintiff in violation of the law after Plaintiff reported the hostile work environment and sexual harassment.

58.   After Plaintiff reported the hostile work environment and sexual harassment to Defendant Brownlee Construction, Inc., and other Defendants, and/or after Defendant Brownlee Construction, Inc., and other Defendants, knew or should have known of the hostile work environment and sexual harassment, Defendant Brownlee Construction, Inc., and other Defendants, failed and/or refused to take prompt and effective remedial action to prevent and stop the hostile work environment and sexual harassment.

59.   After Plaintiff reported the hostile work environment and sexual harassment to Defendant Brownlee Construction, Inc., and other Defendants, and/or after Defendant Brownlee Construction, Inc.,

-10-

and other Defendants, knew or should have known of the hostile work environment and sexual harassment, Plaintiff was treated differently than other employees.

60. Plaintiff was fired within a few weeks after reporting the hostile work environment and sexual harassment to Defendant Brownlee Construction, Inc.'s management.

61. Based on the foregoing, Defendant Brownlee Construction, Inc., and other Defendants, violated the THRA by allowing its agents or employees to retaliate against Plaintiff by subjecting her to tangible job detriment and adverse employment actions after she reported the hostile work environment and sexual harassment, including termination of Plaintiff's employment.

62. Based on the foregoing, all remaining Defendants aided, abetted, incited, compelled or commanded the termination of Plaintiff's employment in retaliation for her reporting of the hostile work environment and sexual harassment.

## IV: COUNT II

### TITLE VII: SEX DISCRIMINATION, SEXUAL HARASSMENT, AND RETALIATION

63. Paragraphs 1 through 62 of the Complaint are realleged and incorporated by reference as if fully set out herein.

64. This cause of action is filed against Defendant Brownlee Construction, Inc., and other Defendants, as an employer.

65. Plaintiff duly filed Charges of Discrimination with the Tennessee Human Rights Commission/Equal Employment Opportunity Commission against the Defendants alleging sex discrimination, hostile work environment, sexual harassment, and retaliation on or about April 27, 2012.

69. Defendants violated Title VII by allowing Plaintiff, a member of a protected class, to be discriminated against because of her sex and allowing her to be subjected to a hostile working

-11-

environment, sexual harassment, and retaliation.

70. Defendant Brownlee Construction, Inc.'s managers, through their apparent and actual authority, discriminated and retaliated against Plaintiff in violation of the law when Plaintiff reported the hostile work environment and sexual harassment.

71. After Plaintiff reported the hostile work environment and sexual harassment to Defendant Brownlee Construction, Inc., and other Defendants, and/or after Defendant Brownlee Construction, Inc., and other Defendants, knew or should have known of the hostile work environment and sexual harassment, Defendant Brownlee Construction, Inc., and other Defendants, failed and/or refused to take prompt and effective remedial action to prevent and stop the hostile work environment and sexual harassment.

72. After Plaintiff reported the hostile work environment and sexual harassment to Defendant Brownlee Construction, Inc., and other Defendants, and/or after Defendant Brownlee Construction, Inc., and other Defendants, knew or should have known of the hostile work environment and sexual harassment, Plaintiff was treated differently than other employees.

73. Plaintiff was fired within a few days after reporting the hostile work environment and sexual harassment to Defendant Brownlee Construction, Inc.'s management.

74. Based on the foregoing, Defendant Brownlee Construction, Inc., and other Defendants, violated Title VII by allowing its agents to retaliate against Plaintiff by subjecting her to tangible job detriment and adverse employment actions after she reported the hostile work environment and sexual harassment, including termination of Plaintiff's employment.

75. Based on the foregoing, all remaining Defendants aided, abetted, incited, compelled or commanded the termination of Plaintiff in retaliation for her reporting of hostile work environment and

-12-

sexual harassment.

## V:   COUNT III

## WRONGFUL DISCHARGE

76.   Paragraphs 1 through 75 of the Complaint are realleged and incorporated by reference as if fully set out herein.

77.   On or about November 2, 2011, an employment relationship existed between Plaintiff and Defendants.

78.   On or about November 2, 2011, Defendants wrongfully discharged Plaintiff constructively and without just or any cause.

79.   A substantial factor in Defendants' decision to discharge Plaintiff was that Plaintiff refused to remain silent about illegal activities, including acts of sexual harassment in the workplace.

80.   As a direct and proximate result of Defendants' intentional and malicious wrongful discharge of Plaintiff, Plaintiff has incurred the following damages, among others:

a.   Lost back wages;

b.   Lost future wages;

c.   Emotional and mental distress;

d.   Embarrassment, humiliation, and shame;

e.   Harm to Plaintiff's reputation; and

f.   Legal fees and court costs.

81.   Wherefore, Plaintiff demands judgment against Defendants in an amount not to exceed Eight Hundred Thousand Dollars ($800,000.00), and attorney fees and costs incurred in this litigation.

-13-

## VI:   COUNT IV

## RETALIATORY DISCHARGE IN VIOLATION OF

## TENNESSEE PUBLIC PROTECTION ACT

82.   Paragraphs 1 through 81 of the Complaint are realleged and incorporated by reference as if fully set out herein.

83.   Pursuant to Tenn. Code Ann. § 50-1-304, no employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

84.   As used in Tenn. Code Ann. § 50-1-304, "illegal activities" includes activities that are in violation of the criminal or civil code of Tennessee or the United States or any regulation intended to protect the public health, safety, or welfare.

85.   On or about November 2, 2011, an employment relationship existed between Plaintiff and the Defendants.   On or about November 2, 2011, Defendants wrongfully discharged Plaintiff constructively and without just or any cause. A substantial factor in Defendants' decision to discharge Plaintiff was that Plaintiff refused to remain silent about, illegal activities, including acts of sexual harassment in the workplace.

86.   Because she was terminated by Defendants in violation of Tenn. Code Ann. § 50-1-304, Plaintiff is entitled to bring a cause of action against Defendants for retaliatory discharge and any other damages to which Plaintiff has incurred.

87.   Also, because she was terminated by Defendants in violation of Tenn. Code Ann. § 50-1-304 solely for refusing to participate in, or for refusing to remain silent about, illegal activities, Plaintiff is entitled to recover reasonable attorney fees and costs from the Defendants.

88.   As a direct and proximate result of Defendants' intentional and malicious retaliatory

-14-

discharge of Plaintiff in violation of the Tennessee Public Protection Act, Plaintiff has incurred the following damages, among others:

    a.    Lost back wages;

    b.    Lost future wages;

    c.    Emotional and mental distress;

    d.    Embarrassment, humiliation, and shame;

    e.    Harm to Plaintiff's reputation; and

    f.    Legal fees and court costs.

89.    Wherefore, Plaintiff demands judgment against Defendants in an amount not to exceed Eight Hundred Thousand Dollars ($800,000.00), and attorney fees and costs incurred in this litigation, for Defendants' retaliatory discharge of Plaintiff in violation of the Tennessee Public Protection Act.

## VII:   COUNT V

## COMMON LAW RETALIATORY DISCHARGE

90.    Paragraphs 1 through 89 of the Complaint are realleged and incorporated by reference as if fully set out herein.

91.    On or about November 2, 2011, an employment relationship existed between Plaintiff and the Defendants.

92.    Plaintiff was constructively discharged by the Defendants on approximately November 2, 2011.

93.    A substantial factor in Defendants' decision to discharge Plaintiff was that Plaintiff refused to participate in, and refused to remain silent about, illegal activities, including but not limited acts of sexual harassment and discrimination.

-15-

94. Defendants decision to discharge Plaintiff for this reason is in violation of both Tennessee law and a clear public policy evidenced by an unambiguous statutory provision. Specifically, Tenn. Code Ann. § 50-1-304, provides that no employee shall be discharged or terminated solely for refusing to participate in, or for refusing to remain silent about, illegal activities.

95. Accordingly, Defendants termination of Plaintiff was wrongful and retaliatory.

96. As a direct and proximate result of Defendants' intentional and malicious common law retaliatory discharge of Plaintiff, Plaintiff has incurred the following damages, among others:

a. Lost back wages;

b. Lost future wages;

c. Emotional and mental distress;

d. Embarrassment, humiliation, and shame;

e. Harm to Plaintiff's reputation; and

f. Legal fees and court costs.

97. Wherefore, Plaintiff demands judgment against Defendants in an amount not to exceed Eight Hundred Thousand Dollars ($800,000.00), and attorney fees and costs incurred in this litigation for the common law retaliatory discharge of Plaintiff by Defendants.

## VIII: COUNT VI

## VICARIOUS LIABILITY UNDER THE DOCTRINE OF RESPONDEAT SUPERIOR

98. Paragraphs 1 through 97 of the Complaint are realleged and incorporated by reference as if fully set out herein.

99. For all relevant purposes in the present case, all Defendants acted as employees and/or agents of Brownlee Construction, Inc.

-16-

100. Among other acts evidencing said employment or agency, Defendant Brownlee Construction, Inc. allowed the remaining Defendants to operate under the name of Brownlee Construction, Inc., including but not limited to holding themselves out as representatives of Brownlee Construction, Inc., paying employees out of a bank account held in the name of Brownlee Construction, Inc., using Brownlee Construction, Inc. stationary, using Brownlee Construction, Inc. business cards, driving automobiles with Brownlee Construction, Inc. emblems, wearing clothing bearing the name of Brownlee Construction, Inc., answering and making telephone calls as Brownlee Construction, Inc., receiving mail as Brownlee Construction, Inc., soliciting business as Brownlee Construction, Inc., and contracting in the name of Brownlee Construction, Inc.

101. When such an agency relationship exists, the principal may be bound by the acts of the agent performed on the principal's behalf and within the actual or apparent scope of the agency.

102. Accordingly, Defendant Brownlee Construction, Inc., as principal, may be held vicariously liable under the doctrine of respondeat superior based upon the acts of the principal's agents, the remaining Defendants.

103. As set forth previously herein, all Defendants are liable to Plaintiff for their intentional and malicious acts and omissions, which constitute breach of employment contract, wrongful discharge, violation of the Tennessee Public Protection Act, and common law retaliatory discharge.

104. The acts and omissions of Defendants and their employees which underlie Plaintiff's causes of action in this case were performed on behalf of Defendant Brownlee Construction, Inc., and within the actual or apparent scope of said agency.

105. Defendant Brownlee Construction, Inc. is vicariously liable to the Plaintiff for the intentional and malicious acts and omissions of its agents, all remaining Defendants, which constitute breach of

-17-

employment contract, wrongful discharge, violation of the Tennessee Public Protection Act, and common law retaliatory discharge.

106. Wherefore, Plaintiff demands judgment against Defendant Brownlee Construction, Inc. in an amount not to exceed Eight Hundred Thousand Dollars ($800,000.00), and attorney fees and costs incurred in this litigation under the theory of respondeat superior.

### IX:   COUNT VII

### NEGLIGENT SUPERVISION

107. Paragraphs 1 through 106 of the Complaint are realleged and incorporated by reference as if fully set out herein.

108. This cause of action is filed against Defendant Brownlee Construction, Inc. as an employer, and the remaining Defendants as agents or employees of Defendant Brownlee Construction, Inc.

109. Defendant Brownlee Construction, Inc. is responsible for its own actions in relation to its agents, the remaining Defendants, and other managers and employees.

110. Defendant Brownlee Construction, Inc. was grossly negligent in failing to adequately supervise its managers and employees, including, but not limited to, Defendant Steven Glasscock and Defendant Adrian Lunsford.

111. Defendant Brownlee Construction, Inc. knew or should have known of the sex discrimination, hostile work environment, sexual harassment, retaliation, defamation, and other unlawful conduct as alleged herein, and/or approved of such conduct, and/or failed or refused to take any action to prevent or stop such conduct.

112. Defendant Brownlee Construction, Inc. was grossly negligent in failing to exercise reasonable care in the supervision of its managers and employees, and allowing them, as Defendant Brownlee

-18-

Construction, Inc.'s agents, to commit and/or participate in the hostile work environment, sexual harassment, sex discrimination, retaliation, defamation, and other unlawful and tortious actions toward Plaintiff as alleged herein.

## X:   COUNT VIII

## NEGLIGENT RETENTION

113. Paragraphs 1 through 112 of the Complaint are realleged and incorporated by reference as if fully set out herein.

114. This cause of action is filed against Defendant Brownlee Construction, Inc. as an employer, and the remaining Defendants as agent of Defendant Brownlee Construction, Inc.

115. Defendant Brownlee Construction, Inc. is responsible for its own actions in relation to their agents.

116. Defendant Brownlee Construction, Inc. was grossly negligent in retaining its managers and employees, who committed the unlawful conduct as alleged herein.

117. Defendant Brownlee Construction, Inc. knew or should have known of the hostile work environment, sexual harassment, discrimination, retaliation, defamation, and other unlawful and tortious conduct as alleged herein, and/or approved of such conduct, and/or failed or refused to take any action to prevent or stop such conduct.

118. Defendant Brownlee Construction, Inc. continued to retain the managers and employees, despite the unlawful conduct as alleged herein.

119. Defendant Brownlee Construction, Inc. was grossly negligent in failing to exercise reasonable care by retaining its managers and employees, and allowing them, as its agents, to commit the hostile work environment, sexual harassment, sex discrimination, retaliation, defamation, and other unlawful

-19-

and tortious actions toward Plaintiff as alleged herein.

WHEREFORE, Plaintiff Jennifer Wallis respectfully requests of this Court as follows:

1.     That process issue and that Defendants be served with Summons and a copy of this Complaint and that they be required to answer under oath;

2.     That Plaintiff be awarded a judgment against Defendants in an amount not to exceed Eight Hundred Thousand Dollars ($800,000.00) as compensatory damages for Defendants' wrongful discharge of Plaintiff; Defendants intentional violation of the Tennessee Public Protection Act; and Defendants common law retaliatory discharge of Plaintiff;

3.     That Plaintiff be awarded a judgment against Defendants in an amount not to exceed Eight Hundred Thousand Dollars ($800,000.00) as damages for the embarrassment, humiliation, and shame that Plaintiff suffered as a result of Defendants' wrongful discharge of Plaintiff; Defendants intentional violation of the Tennessee Public Protection Act; and Defendants common law retaliatory discharge of Plaintiff;

4.     That Plaintiff be awarded a judgment against Defendants in an amount not to exceed Three Million Dollars ($3,000,000.00) as punitive damages for Defendants' intentional conduct and malicious actions in wrongfully discharging Plaintiff; intentionally; and wilfully breaching the Tennessee Public Protection Act; and intentionally and wilfully committing the tort of common law retaliatory discharge of Plaintiff;

5.     That Plaintiff be awarded a judgment against Defendant Brownlee Construction, Inc. in an amount not to exceed Eight Hundred Thousand Dollars ($800,000.00), and attorney fees and costs incurred in this litigation, under the theory of respondeat superior for the intentional and wrongful acts and omissions of its agents, all remaining Defendants.

-20-

6. That Plaintiff be awarded a judgment against Defendant Brownlee Construction, Inc. in an amount not to exceed Three Million Dollars ($3,000,000.00) as punitive damages for the intentional conduct and malicious actions of its agents, all remaining Defendants, in wrongfully discharging Plaintiff; intentionally and wilfully breaching the Tennessee Public Protection Act; and intentionally and wilfully committing the tort of common law retaliatory discharge of Plaintiff, under the theory of respondeat superior.

7. That Defendants pay prejudgment interest, attorney's fees, and costs of Plaintiff;

8. For such other, further, and general relief to which Plaintiff may be entitled; and

9. That a twelve (12) person jury be empaneled to try the issues joined herein.

Respectfully submitted this 30th day of August , 2012.

_____
Jennifer Wallis, Plaintiff

LEIBOWITZ LAW FIRM, PLLC

_____
Lawrence P. Leibowitz (BPR #000974)
Jennifer Knapp Hemmelgarn (BPR #027359)
608 Gay Street, S.W., Suite 200
Knoxville, Tennessee 37902
Telephone: (865) 637-1809
*Counsel for Plaintiff*

-21-

STATE OF TENNESSEE )
                     )ss
COUNTY OF KNOX       )

I, Jennifer Wallis, after being duly sworn according to law, make oath that I have read the foregoing document and that the facts contained therein are true to the best of my knowledge, information and belief.

_____
Jennifer Wallis

Subscribed and sworn to before me this

30th day of August , 2012.

_____
NOTARY PUBLIC

My Commission Expires: 11/23/13

## COST BOND

We, Leibowitz Law Firm, PLLC, hereby acknowledge ourselves as sureties for all costs, taxes, and damages in this cause, in accordance with T.C.A. § 20-12-120.

This 30 day of August , 2012.

LEIBOWITZ LAW FIRM, PLLC

By: _____
Leibowitz Law Firm, PLLC, Surety

T:\LPL\Wallis\Complaint(8.27.12)

-22-